```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
STEPHEN REED AND CINDY REED

                         Plaintiffs,              11-CV-6027
              v.                                  **DECISION AND
                                                  ORDER**

AQUEON PRODUCTS AND CENTRAL GARDEN AND PET,

                         Defendants,
_____
```

## INTRODUCTION

Plaintiffs Stephen and Cindy Reed ("plaintiffs") bring this action against defendant Aqueon Products, and Central Garden and Pet ("defendants") pursuant to this Court's diversity jurisdiction for damages sustained when aquarium equipment manufactured by defendants caused a fire in their daughter's bedroom.

Defendants move for summary judgement contending that since both parties are insured by Liberty Mutual Insurance Company ("Liberty Mutual") plaintiff's claims are barred by the anti-subrogation rule. For the reasons discussed below, the Court grants defendants' motion for summary judgment in part. Specifically, the anti-subrogation rule bars plaintiffs' claims for damages already reimbursed by Liberty Mutual.  To the extent that plaintiffs have not been reimbursed under their homeowner's policy, they may seek such damages against defendants.

## BACKGROUND

On January 16, 2008, plaintiffs' teenage daughter, Chelsea, woke up in the middle of the night to find that a fire had started in her bedroom at 730 Manitou Road in the Town of Greece, New York.

It was later determined that the origin of the fire may have been an aquarium containing an electric-powered water filter that was manufactured and supplied by defendants. At the time of the fire, plaintiffs were insured under a homeowner's insurance policy issued by Liberty Mutual with a $500.00 deductible. Liberty Mutual also insured defendants under a general commercial liability policy with a $250,000 deductible.

Within hours of the fire, Jason Karasinski ("Karasinski"), a level-II fire investigator with Liberty Mutual, responded to the scene to investigate and adjust plaintiff's claims for losses caused by the fire. As part of the investigation, he initially interviewed plaintiffs and photographed the fire-damaged scene. Karasinski returned the following day with fire investigator Richard Shiah ("Shiah") and electrical engineer Gary Hauf ("Hauf") to continue his investigation of the damaged area. They examined debris that had been removed from Chelsea's bedroom and the scene of the fire and recovered pieces of an aquarium and its power cords, which showed signs of electrical arcing. Once Karasinski determined the make and model of the aquarium, he went to the pet store that day and purchased the same model.

Karasinski directed that several relevant pieces of evidence be removed from the scene, including the aquarium and Chelsea's dresser because "based on the amount of damage to the evidence in the area of origin [of the fire], . . . it would be safer to secure it and protect it." Karasinski deposition, p. 44.

At 3:11 p.m. on January 17, 2008, Liberty Mutual's subrogation department put defendants on notice of the fire. The precise content of the notification was not included in the papers submitted by the parties. Reference to the notice was revealed during deposition testimony without quoting from a written notice, if any. The Liberty Mutual commercial adjuster for defendants asked Karasinski to suggest the name of a fire investigator to investigate the incident on defendants' behalf, and he recommended Brian Wydra ("Wydra"). As part of his investigation of the cause of the fire damage to the residence, Karasinski arranged and conducted a live test burn of the same model aquarium, which mimicked the circumstances and environment of the original fire. He did not notify defendants or Wydra of the live test burn explaining "Per NRPA 921 I'm not required to. Aqueon has their fish tank. They can do whatever testing they want." Karasinski deposition, p. 53. Based on examination of the fire scene, a review of the scene with fire investigators, and the testing and live burn demonstration, Karasinski's electrical engineer opined that the fire "was ignited by a failure of the electrical power cord which powered the aquarium water filter pump . . . manufactured by [defendants]." Hauf's expert report, p. 1.

Brian Wydra, a self-employed level-II fire investigator, was first contacted on January 23, 2008 by Liberty Mutual to investigate the fire on behalf of defendants, against whom a third-party claim had been made. He visited the scene on January 28,

2008, but had no contact with plaintiffs. The fire debris that had been recovered from Chelsea's bedroom had been removed. Other items from Chelsea's bedroom, including the aquarium, the dresser, and an outlet, had been removed from the scene prior to Wydra's arrival. Following his investigation, Wydra opined that the location of the fire's origin was between the bed and the wall in Chelsea's bedroom because this was the area of heaviest burning.

When Wydra became aware that the aquarium had been removed from the scene, he hired, Tom Boehly ("Boehly"), an electrical engineer to examine it. They traveled to the Forensic Failure Analysis facility in Syracuse on February 8, 2008 to examine the items that had been collected from Chelsea's room. As a result of his investigation, Wydra concluded that there was insufficient proof that the fire was caused by an electrical failure in an aquarium water pump. Wydra testified that without being able to examine the fire debris that been removed from the scene, he could not render an opinion as to the origin and cause of the fire. In his report, Boehly stated that "the [aquarium] filter pump motor did not fail and did not cause the fire." Boehly's expert report, p. 1.

## DISCUSSION

### I.  Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor." *See Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp.,* 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." *See Scott v. Harris,* 550 U.S. 372 (2007).

**II.  The Anti-Subrogation Rule**

The principle of subrogation, based in equity, allows an insurer to take the place of its insured to seek indemnification from third parties whose wrongdoing has caused a loss to the insured for which the insurer is required to pay. *See Pennsylvania Gen. Ins. Co. v. Austin Powder Co.*, 68 N.Y.2d 465, 471(1986). When two parties are insured under policies issued by the same insurer and covered for the same risk, however, the anti-subrogation rule prohibits the insurer, or one party acting on behalf of the insurer, from recovering damages from the other party on a claim covered by both parties' insurance policies. *See Pennsylvania Gen.*

*Ins. Co.*, 68 N.Y.2d at 471; *North Star Reinsurance Corp. v. Continental Ins. Co.*, 82 N.Y.2d 281, 294, 624 N.E.2d 647, 653, 604 N.Y.S.2d 510, 516 (1993); *Hailey v. New York State Elec. & Gas Corp.*, 214 A.D.2d 986, 987 (1995) (a carrier's right of subrogation is limited when the subrogee and the third party are both insureds of that carrier on the same claim).

In order to determine whether a third party claim is barred by the anti-subrogation rule, "'the Court must decide who is the real party in interest'" *Kurtin v. Nat'l R.R. Passenger Corp.*, 1996 WL 194296, at *2 (S.D.N.Y. 1996), quoting *Pennsylvania Gen. Ins. Co.*, 68 N.Y.2d at 470-471. When the insurer is the real party in interest the anti-subrogation rule applies to claims brought by one insured against another insured. *See Kurtin*, 1996 WL 194296, at *2. Here, with respect to the amounts paid by Liberty Mutual to plaintiffs under their homeowner's policy, Liberty Mutual is the real party in interest. Defendants are insured by Liberty Mutual with a $250,000 deductible. Plaintiff's are also insured by Liberty Mutual with a $500.00 deductible. Thus, this action, if successful, would allow Liberty Mutual to shift its loss, the amount that it is obligated to pay plaintiffs under their homeowner's insurance policy, to defendants.

Inherent in situations where the subrogee and the third party are seeking damages on a claim covered by insurance policies issued by the same carrier is the potential for conflict of interest. *Hailey*, 214 A.D.2d 986 at 987. Such a conflict may affect the

insurer's motivation to provide a vigorous defense for its insured. *See North Star,* 82 N.Y.2d at 294-95; *Home Ins. Co. v Pinski Bros.*, 160 Mont 219, 226 (1972). The anti-subrogation rule "prevents an insurer from passing to one of its own insureds the losses resulting from the risk that the insurer willingly agreed to accept." *Kurtin*, 1996 WL 194296, at *2.

In seeking the most equitable application of this principle, Federal and New York courts have limited the applicability of the anti-subrogation rule to damages less than or equal to the policy limit of the insured seeking damages. *See Kurtin*, 1996 WL 194296, at *3; *Pennsylvania Gen. Ins. Co.*, 68 N.Y.2d at 473. This "prevents the insurer from improperly seeking subrogation for the amount paid on behalf of its vicariously liable insured, but preserves the insured's own right to recover its actual out-of-pocket losses not covered by its insurance policy." *See Kurtin*, 1996 WL 194296, at *3.

Here, defendants contend that because Liberty Mutual is seeking to subrogate against them, its own insured, for the very risk that Liberty Mutual assumed under their general commercial liability policy, this action is barred by the anti-subrogation rule.

As stated above, it is undisputed that Liberty Mutual as subrogated insurer of both policyholders, plaintiffs and defendants, is a party of interest in a lawsuit against another of its policyholders, defendants, whom Liberty Mutual has insured

against the very liability for which Liberty Mutual seeks recovery. Indeed, while asserting only that defendants had a separate and distinct policy, plaintiffs do not dispute that defendants were insured by Liberty Mutual against the risk at issue in this action. *See Home Ins. Co. V. Pinski Bros.*, 160 Mont 219, 225 (it is axiomatic that an insurance company has no subrogation rights against the negligence of its own insured).

The day following the fire, January 17th, Liberty Mutual gave notice to defendants that they were going to proceed against them under their rights of subrogation, requesting defendants to bear the cost of fire damages paid to the plaintiffs. Liberty Mutual controlled the investigation on behalf of plaintiffs' loss, conducted a control burn to test its theory that the loss was caused by a defect in the defendants' product (the wiring in an aquarium in the daughter's bedroom).

Liberty Mutual cannot dispute that notice of its subrogation claim against defendants for the loss being paid to plaintiffs, was given to defendants the day following the fire damage. Defendants, under a general commercial liability policy issued by Liberty Mutual, had a $250,000 deductible. The deductible for the homeowner insurance policy also issued by Liberty Mutual for the plaintiffs was $500.00. The total loss sustained by plaintiffs is $325,424.82, which exceeds the amount reimbursed by Liberty Mutual by $42,430.25. Thus, by commencing this subrogation action on behalf of plaintiffs against defendants, Liberty Mutual potentially

would shift a major portion of the loss it would pay to plaintiffs to the defendants.

## CONCLUSION

The Court finds that the anti-subrogation rule is applicable here and that Liberty Mutual is prohibited from seeking subrogation against defendants for damages sustained by the Reeds in an amount up to the limit of their homeowner's insurance policy. *See Kurtin*, 1996 WL 194296, at *3-4. However, my decision does not apply to any damages that may exceed plaintiffs' policy limit, and, thus, the plaintiffs will retain the right to seek their actual out-of-pocket, uninsured loss of $42,430.25 from defendants.

The remaining issues raised in the pleadings need not be addressed.

**ALL OF THE ABOVE IS SO ORDERED.**

                           s/ Michael A. Telesca
                               MICHAEL A. TELESCA
                               United States District Judge

Dated:    Rochester, New York
            December 9, 2014