```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN REED AND CINDY REED,

                Plaintiffs,

        -v-                                    11-CV-6027T
                                               ORDER
AQUEON PRODUCTS AND CENTRAL GARDEN
AND PET,

                Defendants.
_____
```

Plaintiffs Stephen and Cindy Reed (the "Reeds" or "plaintiffs") initially brought this action against defendant Aqueon Products, and Central Garden and Pet ("defendants") for damages sustained to their home when aquarium equipment manufactured by defendants allegedly caused a fire in their daughter's bedroom. In a Decision and Order dated December 9, 2014, this Court granted in part and denied in part defendants' motion for summary judgment. Specifically, pursuant to the anti-subrogation rule, this Court found that third-party insurer Liberty Mutual was prohibited from seeking damages, as plaintiffs' subrogee, against defendants, who were also insured by Liberty Mutual, for damages sustained by plaintiffs in an amount not to exceed the limit of their homeowner's insurance policy, but permitted to recover any damages that exceeded plaintiffs' policy limit. For the reasons discussed below, plaintiffs' motion pursuant to Fed. R. Civ. P. 59(e) for reconsideration of this decision is denied.

Background

On January 16, 2008, a fire destroyed the Reeds' home in Greece, New York, and it was determined by their insurance adjuster that it may have been caused by an electric-powered water filter manufactured and supplied by defendants, which was part of an aquarium located in their daughter's bedroom. Plaintiffs were insured by Liberty Mutual under a homeowner's insurance policy. Liberty Mutual also insured defendants under a general commercial liability policy.

Within hours of the fire, Liberty Mutual sent Jason Karasinski ("Karasinski"), a level-II fire investigator, to the fire scene on plaintiffs' behalf. As part of his investigation, he interviewed plaintiffs, photographed the fire-damaged scene, and returned the next day with another fire investigator and electrical engineer. They examined debris that had been removed from, plaintiffs' daughter, Chelsea's, bedroom, which was the scene of the location of the aquarium and the fire, and recovered pieces of the aquarium and its power cords, which showed signs of electrical arcing. Karasinski ordered several other relevant pieces of evidence to be removed from the scene, including the aquarium itself and Chelsea's dresser. The Liberty Mutual commercial adjuster for defendants asked Karasinski to suggest someone to investigate the incident separately on defendants' behalf, and he recommended Brian Wydra ("Wydra").

The Liberty Mutual subrogation department put defendants on notice of the fire at 3:11 p.m. on January 17, 2008, the day following the fire. The precise content of the notification is not contained in the record. As part of Karasinski's investigation of the cause of the fire damage to the residence, he arranged and conducted a live test burn of the same model aquarium, but declined to notify defendants or Wydra of the live test burn. In his testimony, he explained: "Per NRPA 921 I'm not required to [notify defendants]. Aqueon has their fish tank. They can do whatever testing they want." Karasinski deposition, p. 53. Karasinski's electrical engineer ultimately opined that the fire in plaintiffs' residence on January 16, 2008 was ignited by the electrical power cord failure of defendants' aquarium water filter pump.   Brian Wydra was not contacted until January 23, 2008 by Liberty Mutual to investigate the fire on behalf of defendants, against whom a third-party subrogation claim had been made by Liberty Mutual. He visited the scene on January 28, 2008, but had no contact with plaintiffs. In addition to the removal of the aquarium, the dresser, and a relevant electrical outlet from the scene, other fire debris recovered from the bedroom had been removed and disposed of prior to Wydra's arrival.

   On February 8, 2008, Wydra and an electrical engineer traveled to the Forensic Failure Analysis facility in Syracuse to examine some of the removed items. As a result of his investigation, Wydra

concluded that there was insufficient proof that the fire was caused by an electrical failure in an aquarium water pump. Without being able to examine the fire debris that been removed from the scene, Wydra could not render an opinion as to the origin and cause of the fire. The electrical engineer's report stated that "the [aquarium] filter pump motor did not fail and did not cause the fire." Tom Boehly's expert report, p. 1.

## Discussion

In this action, plaintiffs (by Liberty Mutual as subrogee) seek recovery from defendants, who are also insured by Liberty Mutual, for the fire damage caused to their residence. Liberty Mutual's investigation of the damage to the Reed property was established to be $325,424.82, which exceeds the limit of the Reeds' homeowner's policy.

Plaintiffs now move for reconsideration of this Court's Decision and Order dismissing Liberty Mutual's subrogation claim, contending that "New York law, which governs this matter, mandates a narrower interpretation of the anti-subrogation rule" than was applied by this Court in its decision. Plaintiffs' motion for reconsideration, p. 3. Plaintiffs urge a finding that the anti-subrogation rule applies only when the parties' insurance policies are indistinguishable from a single policy covering the same risk. This claim had been raised by plaintiffs in their opposition to

defendants' summary judgment motion and was rejected by the Court for the reasons stated in its December 9, 2014 Decision and Order.

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Parrish v. Sollecito*, 253 F.Supp.2d 713, 715 (S.D.N.Y. 2003), quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y.2000); *see also In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (a reconsideration motion is not an opportunity for the moving party "to reargue those issues already considered [by the Court] when a party does not like the way the original motion was resolved."). Nevertheless, "[r]econsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence." *Id.*, citing *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992).

Here, plaintiffs seek reconsideration of this Court's decision on the merits, claiming in effect that the Court misapplied the anti-subrogation rule. Plaintiffs' reliance on *Fashion Tanning Co. V. Fulton Cnty Elec. Contractors, Inc.*, 142 AD2d 465 (3rd Dept 1989), however, is misplaced. The Third Department in *Fashion Tanning* rejected the moving party's invocation of the anti-subrogation rule in the first place because the moving party failed to show that the subrogor and the defendant were insured by the

same insurance company. The Third Department's academic analysis in the *Fashion Tanning* decision is, in any event, unpersuasive to the Court.

Based on the facts described above, allowing Liberty Mutual to sue its own insured in this situation violates fundamental equitable principles and public policy. It is well established that "no right of subrogation can arise in favor of the insurer against its own insured since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." *Chrysler Leasing Corp. v. Public Adm'r, New York Cnty*, 85 A.D.2d 410, 413 (1st Dept.1982). Defendants were insured by Liberty Mutual for claims of <u>liability</u> to others, which in this case includes the Reeds and their dependants. *See Tishman Co. V Carney & Del Guidice, Inc.*, 36 A.D.2d 273, 274 (1 Dept. 1971), *aff'd* 34 N.Y.2d 941 (1974); *Chrysler Leasing Corp.*,85 A.D.2d at 415. Therefore, to permit Liberty Mutual to secure a judgment against its own insured arising from the very risk that defendants were insured against by Liberty Mutual exercising their subrogation rights would violate fundamental ethical principles and public policy. *See Kurtin v. Nat'l R.R. Passenger Corp.*, 1996 WL 194296, at *2 (S.D.N.Y. 1996). Liberty Mutual controlled the investigation of the fire damage at the Reed residence without permitting a separate, impartial investigation of the same evidence on behalf of

defendants. Basic equitable principles are controlling, and Liberty Mutual cannot proceed under its claimed right of subrogation.

Plaintiffs' request for certification of interlocutory appeal pursuant to 28 U.S.C.A. § 1292, in the alternative, is also denied. Plaintiffs do not present any "pure question of law" that the Second Circuit could "decide quickly and clearly without having to study the record." *Morris v. Flaig*, 511 F.Supp.2d 282, 315 (E.D.N.Y 2007) (internal quotation marks omitted). Moreover, § 1292(b) certification is "[not] appropriate for securing early resolution of disputes concerning whether the [lower] court properly applied the law to the facts." *Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y.1982); *see also Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F.Supp.2d 369, 371–72 (S.D.N.Y.2008) (questions regarding application of the appropriate law to the relevant facts are not suitable for certification under § 1292[b]).

## Conclusion

Here, plaintiffs have restated an issue previously considered by this Court and failed to establish any manifest error of law or fact. Accordingly, the Court finds that judgment was properly entered on December 9, 2014, and plaintiffs' motion for reconsideration and, alternatively, for certification of an interlocutory appeal is denied.

**SO ORDERED.**

                                                         S/ Michael A. Telesca
                                                         MICHAEL A. TELESCA
                                                         United States District Judge

Dated:    February 6, 2015
            Rochester, New York